## American Trading and Importing Corporation v. Keystone Furniture Company.

*Variation of written contract by parol agreement—Agreement by agent of corporation to repurchase stock.*

1. Where parties reduce their agreement to writing, the written contract is the contract between them unless it is shown that something has been omitted through fraud, accident or mistake, or that something not appearing in it induced the complaining party to sign it.

2. Where a representative of a proposed corporation selling stock under authority "to do all acts and things in connection" with its formation and organization makes an oral agreement with a purchaser of stock allowing him, if not satisfied at the end of a year, to set off his stock against any claim for merchandise purchased from the company, and this agreement is not included in the written agreement embodying such stock subscription, it is not binding on the company.

Rule for a new trial. C. P. Lancaster Co., Oct. T., 1921, No. 39.

*F. Lyman Windolph* and *John E. Malone*, for defendant and rule.

*K. L. Shirk* and *John E. Coyle*, contra.

HASSLER, J., July 7, 1923.—It was not disputed at the trial of this case that the plaintiff sold and delivered merchandise to the defendant to the amount claimed by it. The defendant claimed the right to set off against plaintiff's claim ten shares of the capital stock of the plaintiff company of the par value of $100 per share. We were of the opinion that under the testimony this could not be done, and gave binding instructions to the jury to find a verdict for the plaintiff for the full amount of its claim. We are now asked to enter judgment for the defendant n. o. v., or to grant a new trial.

It appeared in the testimony that in November, 1919, Harry Haltzel called upon the defendant and told him of the proposed corporation which his brother was about organizing, which was to be composed of furniture dealers,

and had for its purpose the advantageous purchase and importation of such merchandise as the defendant dealt in and asked him to subscribe for some of the stock. He told the defendant that if he was not satisfied he would buy back his stock, or give him merchandise for it. The defendant at that time refused to subscribe for any stock. Subsequently, on Dec. 17, 1919, the request was again made, and the defendant was told: "If I wasn't satisfied after I held it for a year I could get my money back, he would see to it, or get merchandise to the same amount." The defendant then agreed to and did subscribe for ten shares of the stock, and signed a written contract, which was offered in evidence. Nothing in this written contract gives the defendant the right to set off his stock against any claim for merchandise bought by him from the plaintiff corporation. He did not attempt to show that anything was omitted from this written agreement through fraud, accident or mistake, nor does he testify that the statement that he could so set off the stock was an inducing cause for him to sign it. It may be conceded, as claimed by the defendant, that the plaintiff company would have been bound by such stipulation if it had appeared in the contract, but that does not help the defendant, for the reason that it does not so appear, nor was it shown that it was omitted through fraud, accident or mistake.

It is well settled that where parties reduce their agreement to writing, the written contract is the contract between them, unless it is shown that something has been omitted from it through fraud, accident or mistake, or that something not appearing in it induced the complaining party to sign it. In such cases, what is omitted or what induced the one complaining to sign, is to be considered part of the contract. We are of the opinion that the defendant is bound by the written contract in this case, as there was no proof that anything is omitted from it that should be considered a part of it, and he consequently cannot use the stock as a set-off against plaintiff's claim.

On the argument of this rule the defendant's attorneys contended that a parol agreement to permit the capital stock of the defendant company to be used in payment of merchandise bought from it was a collateral agreement, separate and distinct from the written one made between Henry Haltzel, trustee, and the defendant, and that such separate contract is binding upon the plaintiff. To make it binding upon the defendant it was necessary for Harry Haltzel to have had authority to make it, either from the company or from the organizer of it. The burden was upon the defendant to prove that he had such authority, but he has not done so. It is argued that this sentence in the contract, "upon the formation and organization of the company, the trustee (Henry Haltzel) shall have full and absolute authority to do any and all acts and things in connection therewith as he may deem necessary," gives him such authority. We do not agree with this contention. That sentence only gave Henry Haltzel, the trustee, authority, so far as the defendant was concerned, to do any and all acts in connection with the organization of the corporation as he might deem necessary. The defendant certainly could not give the trustee authority to make a separate and collateral contract with himself that would be binding on all the other stockholders of the corporation, but he must have been able to do this if the contention of the defendant is correct. If the trustee, without proven authority, agreed with the defendant to purchase his stock or to see that he got merchandise for it, it is, if it has any effect, only a personal liability, and does not bind the plaintiff corporation. We, therefore, discharge the rule for a new trial, and also the rule for judgment *n. o. v.*

From George Ross Eshleman, Lancaster, Pa.